[No. 598.   Decided January 29, 1889.]

DANIEL STEWART v. WALLA WALLA PRINTING & PUBLISH-
ING COMPANY.

CORPORATIONS — ASSIGNMENT OF STOCK — LIABILITY ON SUBSCRIP-
TION — ESTOPPEL — VERDICT — SPECIAL FINDINGS.

A subscriber to the capital stock of a corporation who has, in
good faith, transferred his shares to another, which transfer has
been accepted by the corporation, before an assessment is made, is
not liable for the unpaid subscription.

Though the by-laws of a corporation require the entry of trans-
fers of shares on a stock ledger, if none is kept and such a transfer
is entered according to the custom of the company on the subscrip-
tion list, and an assignment is indorsed on the shares themselves,
and a new certificate is issued to the purchaser by the company,
the latter cannot deny the validity of the transfer.

Where, in an action against an original subscriber for unpaid
installments of his subscription, his defense being that he has trans-
ferred his shares in the manner mentioned, the general verdict is
for plaintiff, but the jury find specially that defendant sold the
shares by indorsement on the back thereof, which transfer was en-
tered on plaintiff's book, and that a new certificate was issued in
lieu of the one assigned, the judgment should be entered for de-
fendant on the special findings, they being inconsistent with the
general verdict.

*Appeal from District Court, Walla Walla County.*

Action by the Walla Walla Printing & Publishing Com-
pany against Daniel Stewart to recover unpaid installments
on subscriptions to capital stock.   Verdict and judgment
for plaintiff, and defendant appeals.

*B. L. & J. L. Sharpstein,* for appellant.

*A. E. Isham,* for appellee.

The opinion of the court was delivered by

ALLYN, J. — This is an action to recover an assessment
upon an unpaid subscription to thirty-three shares of the
stock of the defendant corporation.   The defense is, that

appellant had transferred and sold, in good faith, his stock to one Tracy long before suit was brought. This is denied. The terms "calls" on unpaid subscriptions and "assessments" are used interchangeably by our statute, and the contention on the part of appellee that, under our statutes, "calls" means something different from "assessments," is unfounded. The act relating to the transfer and assignment of stock certificates, etc., must control the rights of the parties. There was a general verdict found under direction of the court in favor of the plaintiff — the appellee. Special findings were also made that these "shares were sold to Tracy" by "indorsement on the back thereof," and the same was "entered in book B, p. 13, April 13, 1883, as follows: Sold to John Tracy, thirty-three shares," and a new certificate issued in place of the one assigned, and "was properly signed by J. L. Sharpstein, Secretary, and W. G. Langford, President." They failed to answer the question whether Stewart ever delivered the certificate to Tracy, although the evidence shows conclusively that this was done and a new one issued, and although the jury had just answered that the stock was sold by indorsement and entry made in book B. Motion for judgment on special findings, for a new trial, etc., all being overruled, defendant Stewart appeals.

The special findings of the jury control when they are inconsistent with the general verdict. Code Wash. T., § 243. We have quoted sufficient above to show that by the special findings the stock was indorsed and transferred, and proper entry made by the company, and also a new certificate regularly issued. This being so, the court should have entered judgment accordingly; instead of which the general verdict was allowed to control.

It is urged here that the entry on the book of the company was not in full and exact compliance with the by-laws attached to the articles, as these required such entries to be made upon a stock ledger. But no such stock ledger was

kept, and all other transfers and like entries are made as this one upon the records of the company in the subscription list.   It was the fault of the company in failing to keep such book, and it can claim no advantage thereby. The entry and the memorandum of assignment as made were adopted by it as proper, and such entry is entirely sufficient.   *Webster v. Upton*, 91 U. S. 65.

A transfer of stock, even if irregular, accepted and acquiesced in by the corporation, is binding upon it.   Or, if a particular method of transfer has been adopted by the company through custom or use, or by general acquiescence of the shareholders, the company would be equally bound. This is beyond controversy.   See 1 Mor. Priv. Corp. (2d ed.) § 222; and 2 Mor. Priv. Corp., § 743, with authorities cited; also, *Isham v. Buckingham*, 49 N. Y., 216–222; *Cutting v. Damerel*, 88 N.Y. 410; *Johnson v. Laflin*, 5 Dill. 65.   Although it would seem almost unnecessary to cite authorities on this proposition, which is merely another phase of the well known principle that one cannot take advantage of his own fault or wrong.

The main proposition in the case, and the only one entitled to serious consideration, is the contention by appellee in the effort to hold the original subscriber for calls or assessments upon stock he has transferred, and to hold him liable for this, although he had in good faith transferred his stock to another before thus called upon.   We use the term "in good faith," because this test, in our judgment, practically determines the question.   Had he made this transfer in fraud, or the like, or after the call or assessment had been made, and to escape it, the case would be different; but the square issue is presented in the claim that one having taken stock in a company remains subject to the obligations thereby incurred, regardless of a sale of his stock.   The contrary of this is true.   In Ang. & A. Corp., § 534, quoted by appellant, is the following: "When an original subscriber to the stock of an incorporated com-

pany, who is so bound to pay the installments on his sub-scription from time to time as they are called in by the company, transfers his stock to another person, such other person is substituted not only to the rights but to the obli-gations of the original subscriber, and he is bound to pay up the installments called for after the transfer to him. The liability to pay up installments is shifted from the outgoing to the incoming shareholder. A privity is cre-ated between the two by the assignment of the one and the acceptance of the other, and also between them and the corporation; for it would be absurd to say, upon general reasoning, that if the original subscribers have the power of assigning their shares, they should, after disposing of them, be liable to the burdens which are thrown upon the owners of the stock." And in *Webster v. Upton*, 91 U. S. 65–70, Mr. Justice STRONG, in delivering the opinion, says: "But if the law implies a promise by the original holders or subscribers to pay the full par value when it may be called, it follows that an assignee of the stock, when he has come into privity with the company by having stock trans-ferred to him on the company's books, is equally liable. The same reasons exist for implying a promise by him as exist for raising up a promise by his assignor. And such is the law as laid down by the text writers generally and by many decisions of the courts;" citing, also, a number of authorities, and then quoting approvingly the text from Angell & Ames as given by us above.

It is, therefore, a settled rule of law, established by the highest authority, that the vendee of stock in a corporation assumes all the burdens and obligations of an original holder, including either calls or assessments, whichever they may be called. See, also, 1 Mor. Priv. Corp., §§ 159, 161, and authorities already cited above; and also *Chouteau Spring Co. v. Harris*, 20 Mo. 382, and *Miller v. Great Republic Ins. Co.*, 50 Mo. 55.

The question of good faith, or *bona fides*, is always im-

portant, as we have already said, and when this is determined in the affirmative, the transferee of stock steps into the place of the original holder in all particulars, and the vendor is relieved of all liability. Whether the corporation may or may not limit and control these results by imposing conditions and restrictions upon subscribers and transfers and the like, it is not necessary now to decide, as nothing of the kind was done in the case at bar; and as the jury having found this to be a *bona fide* transfer, and having specially found acceptance of the transferee by the company by an entry upon its books, which, though it may have been irregular, was the voluntary act of the company through its officers, and having also found the issuing of a new certificate, the company, under the principles above announced, fully accepted the transfer and accepted the new holder for all the liabilities that the certificate could carry with it. All was done that could be done to transfer the liability from the original holder, the appellant herein, to his purchaser.

The court below should have entered judgment in accordance with these special findings of the jury. For these reasons the judgment of the court below will be reversed.

BURKE, C. J., and NASH, J., concur.