[No. 7692. Decided September 25, 1909.]

S. IVERSON, *Appellant*, v. A. V. BRADRICK, *Respondent.*[1]

APPEAL—PARTIES—SERVICE OF NOTICE. Upon appeal by plaintiff from a judgment in favor of a garnishee, the defendant is not the "prevailing" party upon whom it is necessary to serve notice of the appeal.

CORPORATIONS—STOCKHOLDERS—LIABILITY — SUBSEQUENT CREDITORS —TRANSFER OF STOCK — RECORD—EVIDENCE—SUFFICIENCY. A stockholder in an insolvent corporation is not liable to a creditor for unpaid stock subscriptions, where it appears that he sold his shares while the corporation was a going concern and solvent, before the creditor acquired his claim, and that the stock books and the certificate stubs show the transfer according to the usual custom of the corporation, although it did not keep a stock ledger or strictly comply with Bal. Code, §§ 4261, 4269, concerning the record of transfers of stock; since subsequent creditors stand in the same situation as the corporation.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered June 6, 1908, in favor of the garnishee defendant, upon sustaining a challenge to the sufficiency of the evidence at the close of plaintiff's case, after a trial on the merits before the court. Affirmed.

*Perkins & Honefenger* and *S. Iverson*, for appellant.

*H. M. Stephens*, for respondent.

CROW, J.—On February 10, 1908, the plaintiff, S. Iverson, obtained a judgment in the superior court of Spokane county against White Pine Lumber Company, a corporation, upon

[1]Reported in 104 Pac. 130.

which an execution was issued and returned *nulla bona.*
Thereafter the plaintiff filed an affidavit alleging that A. V.
Bradrick was indebted to the White Pine Lumber Company,
and obtained a writ of garnishment against Bradrick. The
garnishee defendant, answering, alleged that he did not, at
the time of the service of the writ, or at any time since, have
in his possession, or under his control, any property or
effects of the judgment debtor. This answer being denied,
the cause came on for hearing on the evidence and the issues
thus raised. At the close of the plaintiff's evidence, the gar-
nishee defendant challenged its sufficiency. The challenge
being sustained, final judgment was entered in Bradrick's
favor, from which the plaintiff has appealed.

The respondent has interposed a motion to dismiss, con-
tending that the notice of appeal was not served upon the
White Pine Lumber Company, the judgment debtor. It was
served upon the respondent as the prevailing party. The
White Pine Lumber Company is not a necessary party to this
appeal, the issues before us arising exclusively between the
appellant and the respondent as garnishee. *Sipes v. Puget
Sound Elec. R. Co.,* 50 Wash. 585, 97 Pac. 723; *Wilson v.
Puget Sound Elec. R. Co.,* 50 Wash. 596, 97 Pac. 727. The
motion to dismiss is denied.

The controlling question before us is whether the respond-
ent's challenge to the sufficiency of the evidence was prop-
erly sustained. The appellant's contention is, that the re-
spondent subscribed for 100 shares of the capital stock of the
White Pine Lumber Company; that he paid for 80 shares
only; and that he was still indebted to the corporation in the
sum of $2,000, his entire subscription for the remaining
twenty shares. The respondent urges several reasons for
sustaining the judgment of dismissal. We only find it neces-
sary to discuss his contentions that he is not a stockholder,
that he has not been one at any time since February, 1904,
and that he is not indebted to the corporation for any unpaid
stock subscription.

Assuming for the purposes of this appeal that respondent never paid any part of his subscription for the twenty shares, although he contends that he made payment in full, we find the undisputed facts to be, that in 1901 he originally subscribed, and later paid for, 80 shares of the capital stock, of the par value of $100 per share; that in March or April, 1902, the capital stock of the corporation was increased; that he then subscribed for twenty additional shares; that a certificate for 100 shares was then issued to him; that later it was cancelled; that two new certificates for fifty shares each were issued to him in lieu thereof; that thereafter, in February, 1904, he, for a valuable consideration, then paid, sold, indorsed and delivered these two certificates to one W. J. Harris, who in March, 1904, caused them to be delivered to the corporation for cancellation; that the stock book of the corporation contains the cancelled certificates, and also shows the stub of a new certificate issued to Harris; that at the time of respondent's sale to Harris, the corporation was a going and prosperous concern, but that its milling plant was afterwards destroyed by fire; that the appellant acquired the claim on which his judgment was entered, after respondent ceased to be a stockholder, and that his claim was not based on any prior obligation, liability or debt of the corporation. Upon these facts the respondent contends that, even though the subscription for the twenty shares of stock still remains due and unpaid, he has been released from liability therefor, being no longer a stockholder, and that the corporation or its creditors must look to Harris as his vendee for the subscription.

The appellant contends that while the stock transfer may be valid as between the respondent and his vendee, it is not sufficient in law to release the respondent from liability to the corporation or its creditors for his unpaid subscription, the stock not having been transferred upon the corporation books in strict compliance with the requirements of Bal. Code, §§ 4261, 4269 (P. C. §§ 7063, 7070). The stock certificate book unquestionably shows that respondent's certificates were

surrendered to the corporation and cancelled by it, but the appellant's contention on the trial was, and now is, that the corporation did not, in compliance with § 4269, *supra*, keep a stock ledger containing the names of all stockholders alphabetically arranged, the number of shares owned by them respectively, and the times when they acquired their stock. It was not shown that any such book was ever kept or owned by the corporation. It does appear, however, that it had a book of stock certificates and stubs, from which it could be readily ascertained who were stockholders at any particular time, how many shares each person held, and when they became stockholders. This book contained indisputable evidence of the fact that respondent's certificates had been surrendered to the company and cancelled. Thus it not only appeared that the respondent in fact sold his stock to Harris in February, 1904, but that the company had ratified the sale by entries on its books, in that it transferred the stock by the only and usual method it had adopted for making transfers. The corporation was thereafter estopped from collecting any subscription from the respondent Bradrick. It could only pursue Harris his vendee, notwithstanding the fact that it failed to keep a stock ledger in strict compliance with § 4269, *supra*. The appellant, as a subsequent judgment creditor of the corporation, is no more entitled to enforce such subscription against the respondent than is the corporation itself.

"A transfer of stock, even if irregular, accepted and acquiesced in by the corporation, is binding upon it. Or, if a particular method of transfer has been adopted by the company through custom or use, or by general acquiescence of the shareholders, the company would be equally bound. This is beyond controversy." *Stewart v. Walla Walla Print. & Pub. Co.*, 1 Wash. 521, 20 Pac. 605.

See, also, *Van Horn v. New Western Shingle Co., ante* p. 117, 103 Pac. 42; 10 Cyc. 700, 701.

Considering the above authorities and the facts found, we

conclude that from and after March, 1904, the respondent ceased to be liable for any unpaid stock subscription.

The judgment is affirmed.

RUDKIN, C. J., MOUNT, DUNBAR, GOSE, FULLERTON, and CHADWICK, JJ., concur.

MORRIS and PARKER, JJ., took no part.