[Nos. 14243, 12186.  *En Banc.*  May 11, 1918.]

# E. M. GORDON *et al., Respondents,* v. C. D. HILLMAN *et al., Appellants.*

## THE STATE OF WASHINGTON, *on the Relation of E. M. Gordon et al., Plaintiff,* v. EVERETT SMITH, *Judge etc., Respondent.*[1]

COURTS—SUPREME COURTS—TERMS.  Under Const., art. 4, § 2, providing that the supreme court shall always be open, there are no terms of court, and the close and termination of a session, provided for by Rem. Code, § 4, does not preclude the court from entertaining an application to recall a remittitur and vacate a judgment entered at such term.

APPEAL—DECISION—RECALL OF REMITTITUR.  It is within the inherent power of the supreme court, under its appellate and revisory jurisdiction, to recall a remittitur and vacate its judgments in a proper case.

ABATEMENT AND REVIVAL—DEATH PENDING APPEAL.  Under Rem. Code, § 193, which abrogates the common law and provides that no action shall abate by the death of a party if the cause survives, and Id., § 1743, providing for substitutions in case of the death of a party after final judgment from which appeal has been taken, the supreme court having acquired jurisdiction of a party before death, and having jurisdiction of the subject-matter of a trial *de novo* on appeal, there is no abatement of the cause of action by a death which was not brought to the attention of the court; and the judgment and proceedings are not void or voidable, but only erroneous.

APPEAL—REVIEW—RECALL OF REMITTITUR—DILIGENCE.  Petitions to recall two remittiturs and vacate judgments in two cases, because of the death of a party coming to the knowledge of the petitioners only after the first judgment was entered, will be denied for want of diligence, where petitioners had notice of the death at the time the decree was presented to the court below after remittitur went down in the lower court, and failed to then petition for relief, or to suggest a substitution upon a hearing of the subsequent case.

STIPULATIONS—WRITING.  Stipulations not made in writing or in the record of the court cannot be considered.

APPEAL — DECISION — RECALL OF REMITTITUR — GROUNDS — RELIEF FROM ERRONEOUS JUDGMENT.  In an action for rescission of a trade

[1]Reported in 173 Pac. 22.

of real estate and personal property, in which judgment for restoration was affirmed after the death of a party pending appeal without substitution having been made, a recall of remittiturs and vacation of the judgment is not warranted by the fact that reconveyance cannot be made as to minor heirs of the deceased party, nor by the fact that one of the parties wasted and permitted loss to the properties to be restored; but the supreme court will grant permission to sue for the losses sustained by the failure of title through the death and failure to suggest the same, and waste and loss of the properties.

Petitions to recall remittiturs and for leave to vacate a judgment, filed in the supreme court April 26, 1918. Denied.

*Wilson R. Gay* and *Geo. H. Rummens,* for appellants.

*Byers & Byers,* for respondents.

HOLCOMB, J.—We have here before us two concurrent petitions by the petitioners to recall remittiturs heretofore issued from this court, and also for leave to vacate judgment upon facts alleged in one of the petitions under the practice first authorized by this court in *Post v. Spokane,* 28 Wash. 701, 69 Pac. 371, 1104. The cause was originally before us on appeal by the petitioners, who were defendants in the case of *Gordon v. Hillman,* 91 Wash. 490, 158 Pac. 96, an equitable action for rescission of contracts of sale of real and personal property, where a judgment and decree of the lower court was affirmed. It subsequently came before us upon an application filed here for writ of mandamus to compel the judge of the court below to sign a decree in the case of *State ex rel. Gordon v. Smith,* 98 Wash. 100, 167 Pac. 91, 169 Pac. 468.

In one or both of the petitions now before us, one of the grounds relied upon for the relief is that, pending the appeal to this court in the original cause, Mrs. Gordon, one of the plaintiffs and a necessary party in that

action, died. The original judgment was entered in the court below February 28, 1914, and it is shown now that, on August 22, 1914, Eva P. Gordon, one of the plaintiffs and wife of E. M. Gordon, died, and E. M. Gordon was, on September 17, 1914, appointed and qualified as administrator of the estate of Eva P. Gordon, and that never at any time, or at any stage of the proceedings on appeal, was the administrator or any other person substituted as a party respondent in that cause in lieu of or as a representative of Eva P. Gordon, deceased. It is asserted that all proceedings and all opinions by the court rendered and all judgments made and rendered therein were had and done at a time subsequent to the death of Eva P. Gordon and while there was no person substituted in her place and stead, and for that reason the whole proceedings in this court subsequent to the death of Eva P. Gordon were and are void, and for that reason must be vacated and set aside and all remittiturs recalled and all judgments of the superior court based thereon vacated. It is also alleged that Eva P. Gordon left her surviving two minor children, and that all the real estate of which she died possessed vested immediately, as to her one-half interest therein, in the two minor sons, Donald P. Gordon and Douglas D. Gordon, who each owned an undivided one-fourth interest in and to the real estate and an undivided one-eighth interest in and to the personal property, which includes the money judgment entered in the original cause.

Respondents have appeared and demurred and also answered to the petitions, and as grounds of demurrer urged that this court had no jurisdiction over the respondents by the petition. One of the propositions urged under the demurrer is that all proceedings in both cases referred to herein were terminated and remittitur filed below prior to the commencement of the

present term of court, and that this court has no jurisdiction after the close of the term at which the decisions were handed down.

There is no merit in this contention. The constitution creating this court, art. 4, § 2, provides that it shall always be open for the transaction of business except on nonjudicial days. The statute, Rem. Code, § 4, follows the same provision, but provides also that regular sessions shall commence on the second Mondays of January, May, and October of each year. Under the constitutional provision there are no terms of this court in the sense in which they were formerly held, but only a division of sittings in the sessions for its convenience in the transaction of business. *Skagit R. & Lum. Co. v. Cole,* 1 Wash. 330, 26 Pac. 535. Terms of court, as they are provided for in many jurisdictions where a court of record acquires and maintains, after which it cannot, except for a limited extended period, retain jurisdiction, do not exist in this state.

As to the power of the court to grant such relief in exceptional cases, that was settled in *Post v. Spokane, supra,* and followed in several subsequent cases. It is proper where the petition states facts sufficient to justify the relief demanded, and the permission of the court to take further action in the matter that has been litigated in the trial courts and by appeal to this court is not original jurisdiction, but is one of the powers of this court under its appellate and revisory jurisdiction. It is an inherent power of a court of equity, whether original or appellate.

Petitioners rely upon the provisions of Rem. Code, §§ 967, 193, and 1743. Section 1743 provides as follows:

"The death of a party after rendition of a final judgment in the superior court shall not affect any appeal taken, or the right to take an appeal; but the

proper representatives in personalty or realty of the deceased party, according to the nature of the case, may voluntarily come in and be admitted parties to the cause, or may be made parties at the instance of another party, as may be proper, as in case of death of a party pending an action in the superior court, and thereupon the appeal may proceed or be taken as in other cases; and the time necessary to enable such representatives to be admitted or brought in as parties shall not be computed as part of the time in this act limited for taking an appeal, or for taking any step in the progress thereof.''

Section 193 provides:

''No action shall abate by the death, marriage, or other disability of the party, or by the transfer of any interest therein, if the cause of action survive or continue; but the court may at any time within one year thereafter, on motion, allow the action to be continued by or against his representatives or successors in interest.''

At common law all actions pending abated upon the death of a necessary party. But § 193, *supra,* abrogated this provision of the common law, and provided that no action should abate by the death of the party if the cause of action survived or continued; and there is no doubt that such a cause of action as was here originally involved was one which survived or continued. But that cause of action had then been merged in a judgment in favor of plaintiffs, and the plaintiffs had a judgment which was final, subject only to appeal, and in such action this court was required to try the cause *de novo* upon the record. Having merged into judgment, the cause of action could not abate upon the death of either of the plaintiffs. After the judgment, the provisions of § 1743, *supra,* related to the abatement of the right to appeal or of an appeal taken; and it was there enacted that the death of a party after judgment should not affect any appeal taken or the

right to take an appeal, but the proper representatives in personalty or realty of the deceased could come in voluntarily as parties to the cause; or, if they failed to do so, the adverse party might cause them to be substituted pending the appeal.

Although Mrs. Gordon died at about the time that the appeal from the original judgment in her favor was perfected by these petitioners, nevertheless they had secured jurisdiction of her on appeal, and this court had acquired jurisdiction of her and of the subject-matter of the appeal and the matter in controversy between them, and no suggestion was made in this court by either the appellants (petitioners here) or the respondents of the death of Mrs. Gordon until after this court had rendered a final decision and the remittitur thereon had gone down to the court below. Under the statute, the appellants in that case, having the privilege of suggesting the death of one of the necessary parties and bringing about a substitution of parties, failed to do so. While the petition does not so aver, it was stated and urged in the oral argument on these matters by the counsel for petitioners that counsel did not know of the death of Mrs. Gordon until about the time that the remittitur went down in the original cause and some matter was being presented in connection with the decree in the court below, and it is shown that petitioners themselves were during all the time in California. The first suggestion we can find in the record of the death of Mrs. Gordon is in the decree which was presented by respondents in the original cause for entry in the court below on May 3, 1917, where it was then mentioned that E. M. Gordon was the administrator of the estate of Eva P. Gordon, deceased. Upon a hearing of the application for the writ of mandamus before this court in cause No. 14243, respondents in that matter, appellants in the original

cause and petitioners here, suggested the fact of the
death of Mrs. Gordon to this court and that no substi-
tution had been made, but no action was then taken by
either of the parties to the original cause for a sub-
stitution of parties.  This court, by its departmental
decision, *State ex rel. Gordon v. Smith,* 98 Wash. 100,
167 Pac. 91, noticed the death of Mrs. Gordon, and in
the opinion said:

"The death of one of plaintiffs prevents a reconvey-
ance by the plaintiffs as individuals, but the deed of
the commissioner will convey all of the title of the sur-
viving plaintiff as well as all of the title vested in the
estate of the deceased plaintiff.  It can be made with
the special warranties required by the judgment, ob-
ligatory upon the surviving plaintiff and upon the
estate of the deceased plaintiff, and to these special
warranties the defendants must look for any relief, if
to any they are entitled," etc.

While this departmental decision became final as the
decision and judgment of this court, it is manifest that
it was erroneous in that part which held that a com-
missioner appointed by the court could divest the title
of the deceased plaintiff as well as that of the surviving
plaintiff in community real estate which had vested,
not in the administrator and not in the surviving plain-
tiff or member of the community, but in the minor heirs
of the deceased.  There should at that time have been
some motion on the part of one or the other of the par-
ties hereto to cause a substitution of the "proper rep-
resentatives in personalty and realty of the deceased;"
and, as has been said, it was as much the duty of the
one party as the other, having knowledge of the facts.
It is probable that petitioners' first knowledge of the
fact of the death of Mrs. Gordon was at the time of
presentation of the decree, which the court below re-
fused to sign as presented and which was brought here

by the application for the writ in No. 14243. Then the representative of the respondents there (petitioners here) urged the fact upon this court and the suggestion was ignored.

Most of the argument of counsel for petitioners as to the abatement of the cause of action or the appeal, and most of the authorities they cite, involve only causes of action which have not yet been reduced to judgment.

"As a general rule the death of a party pending an appeal or writ of error furnishes no ground for the abatement of the action." 1 Cyc. 79.

"Where judgment below has been rendered in favor of plaintiff, and he dies pending an appeal or writ of error prosecuted by defendant, there is no abatement of the appellate proceedings. But where the judgment below is for defendant, and he dies pending an appeal or writ of error prosecuted by plaintiff, the appellate proceedings will abate." 2 Cyc. 772.

"Where the sole defendant is dead when suit or writ of error is brought, it may be true that a judgment against the deceased defendant is a nullity, for the reason that the court never acquired jurisdiction of the cause. In such case the court never acquired authority to act or take any step. But that is not the case here. Here, the court, before taking any steps, was clothed, by the acts of the parties and the law, with full jurisdiction and rightful authority to render the judgment that it did. Did the death of the appellee—not brought to the notice of the court by plea, suggestion, or otherwise—deprive it of jurisdiction lawfully acquired? We think not." *Danforth v. Danforth,* 111 Ill. 236.

See, also, *Phelan v. Tyler,* 64 Cal. 80, 28 Pac. 114; Black, Judgments, § 306.

We therefore conclude that there was no abatement of the cause of action on the death of Mrs. Gordon, nor of the appeal taken by the parties against whom she had judgment, jurisdiction of which had been acquired by this court prior to her death, and that the further

proceedings in this court thereafter were not void nor voidable, and were not even erroneous.

Nor can we recall the remittiturs in the two proceedings involved.

"This court lost jurisdiction of the cause when the remittitur went down. For the purpose of correcting a mistake, or enforcing its judgment, this court may recall a remittitur, if application therefor is made with due diligence. . . . There is no contention that any mistake was made in the original opinion, nor has application for a recall of the remittitur been made with due diligence." *Peabody v. Edmonds,* 72 Wash. 604, 131 Pac. 250; *Willson v. Willson,* 86 Wash. 50, 149 Pac. 328; *State ex rel. Burke v. Board of County Com'rs,* 61 Wash. 684, 112 Pac. 929.

Petitioners had notice of the death of Mrs. Gordon at the time the decree was presented to the court below after the remittitur went down in the original cause; knew that Mrs. Gordon was the wife of E. M. Gordon, that the estate was community estate, and that it vested immediately upon her death in her heirs. That was in May, 1917. That was the time for them to petition, as they have now petitioned, for relief against the proceedings in the original cause on account of the intervention of interests of others than those of the original parties.

However, there are grounds of relief urged in the petitions other than those we have noticed. Among other things, it is urged that, by reason of the death of Mrs. Gordon, reconveyance cannot be made of her interests in the real estate which had been conveyed by petitioners to them, since title vested in her heirs, and that they have not conveyed, and are minors and cannot convey. As was stated before, this was noticed in the decision in *State ex rel. Gordon v. Smith,* 98 Wash. 100, 167 Pac. 91, 169 Pac. 468, but it is not there noticed that the real estate of Mrs. Gordon vested in

two minor heirs, and it was assumed that the commis-
sioner appointed by the court could convey all the title
vested in the estate of the deceased plaintiff. This the
court is manifestly without power to grant, since the
estate of the deceased plaintiff was vested in her heirs
and those heirs were minors and had never been before
this court or the court below in the matter in contro-
versy. It is answered by respondents here, however,
that, prior to the institution of the original action, the
Gordons had tendered into court deeds to the real
property for the use and benefit of these petitioners,
and that the deeds remained in the registry of the
court subject to the disposition and control of the peti-
tioners, and that they were finally accepted by the peti-
tioners. Apparently we did not so find the record
when determining the application in cause No. 14243.
What the lower court, in the original cause, at-
tempted to do in the controversy was to restore the
*status quo* of the parties as to property concerning
which they had negotiated, and to preserve certain
equities in favor of all the parties. In doing so, the
decree provided that plaintiff should restore certain
properties to defendants and that defendants should
restore certain properties to plaintiffs. In the peti-
tions now before us it appears that, while the peti-
tioners, who were defendants in the original cause, pru-
dently and carefully preserved all the property which
had passed to them from the plaintiffs, paid taxes
thereon, paid interest on mortgage debts, and allowed
no interest to be lost or destroyed; on the other hand,
plaintiffs, while the action was pending below and in
this court, allowed great losses in the property which
had been conveyed to them, both real and personal, al-
lowed taxes to accrue, although they had money in
their hands with which to pay them, allowed interest
on notes to default, allowed notes to become overdue,

and failed to collect them or make any attempt to collect them, and in divers respects caused and permitted great loss and damage to the properties which had been transferred and conveyed to them, and upon the termination of the litigation turned back properties to these defendants under the decree in an almost worthless condition by reason of the dissipation, waste and loss thereof; that, on the other hand, the defendants paid out large sums in preserving the property held by them, for which they could obtain no relief because it was not a subject of controversy in the original action; and that the loss and damage which was accruing through the acts and omissions of respondents while the litigation was pending in the original controversy could not be considered because not a matter of original controversy therein; that, by reason thereof, they are entitled to relief under the principle announced in *Post v. Spokane, supra.*

As to these averments, respondents answered with denials and also affirmative allegations, to the effect (1) that there was a stipulation agreed to by the petitioners in open court that the judgment in the original cause as entered should be final and there should be no further litigation; that a consideration for that stipulation was paid and accepted, in that petitioners gave a promissory note in the sum of $10,000 secured by mortgage, the payments of which when made were to be made on the judgment, thereby acquiescing in and confirming the finality of the judgment; (2) that petitioners accepted the deeds, notes and transfers tendered to them at the initiation of the action in 1912, at the time of the signing of the final judgment on January 5, 1918, and retained the same; (3) that petitioners had acknowledged their liability as defendants in an action to foreclose a mortgage on the principal piece of property, known as the Pike Place property, which

they have at all times retained since the initiation of the action and now retain, and for which the alternative judgment was mostly awarded.

As to the stipulation alleged to have been made in open court on January 5, 1918, it not having been made in writing or made of record in the court, cannot be considered here. As to the acquiescence by giving the promissory note and mortgage for $10,000 to be applied upon the judgment, it is shown by a contract made at the time the notes are shown to have been made as collateral thereto, set out in one of the petitions here, that "Gordon in accepting that note and mortgage is not accepting them as security for the payment of the judgment entered in the state of Washington or any part or portion thereof; that the application of said judgment is not affected in any way by the execution and delivery of said note and mortgage or by the execution of this agreement. Dated March 19, 1918."

As to the retention of the principal part of the property in litigation by the respondents, we have no knowledge. We must presume, however, that the decree heretofore entered and affirmed and thereafter ordered to be carried into execution by a further judgment of this court has been obeyed. If not, there are very effective remedies therefor.

In conclusion, we are convinced that we have no jurisdiction to recall the remittiturs, or to stay the proceedings until petitioners can litigate their claims against the Gordons for their losses on account of waste and dissipation of the property while held by the Gordons prior to the final decree in the cause, for the reasons heretofore stated.

The showing made by petitioners is such, however, that we believe the ends of justice demand that an opportunity shall be given to petitioners to litigate in

some appropriate manner the losses and damages alleged to have been sustained by them.

Permission is hereby granted, therefore, for petitioners to proceed, if they be so advised, in any form of action at law or in equity for relief in damages or otherwise, for such losses as they have sustained in regard to the property transferred and conveyed to the Gordons involved in their controversy, and the failure of title, if any, by reason of the death of plaintiff Mrs. Gordon and the intervention of the rights of her minor heirs. This is all the relief which under the law we are authorized to grant.

Mount, Parker, Webster, and Mackintosh, JJ., concur.